**James Russell HEAVENER, Plaintiff,**

v.

**Trooper Rick MEYERS, Defendant.**

**No. CIV–00–650–S.**

United States District Court,
E.D. Oklahoma.

Aug. 31, 2001.

Messrs. Jonathan C. Neff & David M. Messer, Tulsa, for Plaintiff.

Mr. Edward Clyde Kirk, Mr. Kevin L. McClure, Mr. Gary J. James, Oklahoma City, Office of the Attorney General, State of Oklahoma, for Defendant.

## ORDER

SEAY, District Judge.

Following a two-day jury trial, Plaintiff prevailed on his Fourth Amendment claim of excessive force brought against Defendant, Rick Meyers, pursuant to the authority of 42 U.S.C. § 1983, as well as on his pendent state claims for assault, battery, and intentional infliction of severe emotional distress.[1] The jury awarded Plaintiff compensatory damages in the amount of $50,000 on his excessive force claim and $1 in nominal damages for each of the pendent state claims. In addition, the jury awarded punitive damages in the amount of $5,000 on each of the four claims asserted by Plaintiff. On July 11, 2001, the court entered judgment consistent with the jury's verdict.

As the prevailing party in this action, Plaintiff filed, on July 20, 2001, an application for an award of attorney fees under the provisions of 42 U.S.C. § 1988. In that submission, Plaintiff seeks $78,251.95 in attorney fees. Plaintiff requests compensation for services rendered by his two attorneys, Jonathan C. Neff and David M. Messer, both of the law firm of Brune and Neff, P.C., located in Tulsa, Oklahoma. The invoice of professional services attached to Plaintiff's application reflects the total number of hours claimed by Neff and Messer and their respective hourly rates. Neff claims 183.05 hours at an hourly rate

---

1. This action was originally filed in the United States District Court for the Northern District of Oklahoma. On November 15, 2000, the Northern District court transferred the case to the Eastern District pursuant to 28 U.S.C. § 1406(a) after determining that venue was improper in the Northern District.

of $200. Messer claims 250.75 hours at an hourly rate of $125. Messer also seeks compensation for an additional 75.25 hours at an hourly rate of $100 for the period of time he worked on the case as a law clerk before he was admitted to the practice of law by the Oklahoma Bar Association in April 2001. Finally, Plaintiff's invoice reflects 46.12 hours expended by legal assistants, including Messer, at an hourly rate of $60. Thus, the total number of hours for which compensation is requested is 555.27.

On August 2, 2001, Defendant filed his response to Plaintiff's fee application. Defendant concedes Plaintiff's status as the prevailing party in this litigation, but vigorously objects to the hourly rates requested by counsel and further argues that the number of hours claimed by counsel is unreasonable and excessive. Specifically, Defendant contends counsel's lack of experience in the area of civil rights litigation warrants a reduction of the requested hourly rates to $125–150 per hour for Neff and $90–100 per hour for Messer. With respect to the number of hours claimed by counsel, Defendant contends they should be reduced to account for counsel's lack of experience in civil rights litigation, time spent in connection with the dismissal of the State of Oklahoma, travel time, secretarial time, and duplication of effort. On August 23, 2001, a hearing was held on this matter.

Having reviewed the respective submissions of the parties and considered the testimony presented at the hearing, the court concludes that Plaintiff's application for attorney fees should be approved, but at a substantially reduced figure than that requested by Plaintiff. The court finds that a significant reduction is warranted in order to account for (1) the excessive billing and fee padding practices which are evident from the court's review of the attached invoice, (2) the simple, straightforward nature of this civil rights litigation, and (3) the inexperience of counsel which resulted in counsel using this litigation as an "educational forum" in the area of civil rights law. Additionally, the court finds the requested hourly rates are in excess of the customary hourly rates within the local market for attorneys with the experience and skill of Plaintiff's counsel.

■ As the prevailing party in this civil rights case brought under 42 U.S.C. § 1983, Plaintiff is entitled to seek reimbursement for his reasonable attorney's fees. 42 U.S.C. § 1988(b).[2] A fee request under § 1988(b) places the burden on Plaintiff to establish two elements: (1) that he was the "prevailing party" in the litigation; and (2) that his request is "reasonable." *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Phelps v. Hamilton,* 120 F.3d 1126, 1129 (10th Cir.1997); *Ellis v. University of Kansas Medical Center,* 163 F.3d 1186, 1193 (10th Cir.1998). As there is no question about Plaintiff's prevailing party status, the lone inquiry in this case is whether Plaintiff has established that his fee request is "reasonable."

■ "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Ramos v. Lamm,* 713 F.2d 546, 552 (10th Cir.1983) (quoting *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933). This resulting "lodestar" fig-

---

**2.** This fee statute provides:

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983 [etc.] ... of this title ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988(b).

ure—the product of reasonable hours times a reasonable rate—is presumed to be a reasonable fee. *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1983); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, (Pennsylvania I),* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). With respect to a determination of the reasonable number of hours, the court must carefully scrutinize the reported hours to determine if they can reasonably be charged to Defendant. *Ramos,* 713 F.2d at 553. It is incumbent upon Plaintiff to "prove and establish the reasonableness of each dollar, each hour, above zero." *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1210 (10th Cir.1986). Plaintiff's counsel has the obligation to keep "meticulous, contemporaneous time records" to enable the court to determine an appropriate fee. *Ramos,* 713 F.2d at 553. As noted by the Tenth Circuit:

> These records must reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks—for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint, and so on.

*Id.* Counsel is further obligated to "make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee

submission." *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933.

■ Counsel's invoice contains numerous entries which reflect the unreasonableness of the requested hours. Two examples highlight the court's concerns. First, the invoice reflects five separate entries, totaling 19 hours, related to research on the issue of Eleventh Amendment immunity raised by the State of Oklahoma in a motion to dismiss.[3] Plaintiff initially sued Meyers, in his individual and official capacities, and the State of Oklahoma, ex rel Oklahoma Highway Patrol ("the State"). In response to the State's motion to dismiss, Plaintiff voluntarily dismissed Meyers, in his official capacity, and the State. This dismissal was filed after nineteen hours of research by Messer on the State's Eleventh Amendment defense.[4] These hours are clearly excessive in the specific context of the Eleventh Amendment defense raised by the State and, moreover, are indicative of a systematic practice of excessive billing by counsel attributable, in large part, to counsel's inexperience. The Eleventh Amendment immunity generally afforded the state and its officers, sued in their official capacity, is well-established. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Ramirez v. Oklahoma State Dept. of Mental Health,* 41 F.3d 584, 588 (10th Cir.1994). Absent a waiver, or congressional authorization of the suit, the Eleventh Amendment bars damages suits against States and state officials in federal court, whether the

---

**3.** These entries are on 12/21/00, 12/22/00, 12/26/00, 12/27/00, and 12/28/00.

**4.** The Eleventh Amendment research was conducted by Messer, an associate with the Brune & Neff firm. Several of Messer's entries related to Eleventh Amendment research also contain references to "discussion with Jon Neff." Neff is a senior partner with the firm. No attempt is made to allocate the hours

spent by Messer in research as opposed to hours spent in "discussion" with Neff. The court will thus assume all 19 hours were spent researching as Plaintiff has failed to satisfy his burden of showing the allocation of hours to specific tasks. In any event, as detailed below by the court, it abhors counsel's practice of billing for "discussion" time in the senior partner/associate litigation model utilized by counsel herein.

claims are federal claims or pendent state claims.[5] *Pennhurst*, 465 U.S. at 120, 104 S.Ct. 900; *Linville v. State of Hawaii*, 874 F.Supp. 1095, 1104 (D.Hawai'i 1994). It is beyond reason to assign nineteen hours of research to an issue which is so well-established in the area of civil rights litigation in general, and section 1983 claims in particular. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 452, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (States are excluded as parties defendant in § 1983 actions); *Ellis*, 163 F.3d at 1196 (Congress did not abrogate the States' Eleventh Amendment immunity when it enacted § 1983). Excessive hours in the context of this simple, well-defined issue is indicative of counsel's overall excessive billing practices and their use of this litigation as an "educational forum" for excessive force claims brought under section 1983 and Oklahoma's common law.[6]

The second category of excessiveness exhibited by counsel in their fee application involves counsel's billing for "discussion" time. No less than 49 entries in counsel's invoice contain billings for "discussion" with co-counsel.[7] This is duplicative work which is not compensable and will not be condoned by the court. It is a prime example of fee-padding and excessive billing, particularly in a case this simple. While certain complex litigation may require a combined effort by counsel, this factually limited excessive force case, with well-established legal standards, is not one which requires joint effort on specific tasks. The court's criticism in this respect is not directed to the use of two attorneys to litigate the matter.[8] Having made that

---

5. This immunity applies "whether the relief sought is legal or equitable." *Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *V–1 Oil Co. v. Utah St. Dept. of Public Safety*, 131 F.3d 1415, 1420–21 (10th Cir.1997). One exception to this bar, however, is for suits for prospective injunctive relief against state officials to remedy continuing violations of federal law under the rule announced in *Ex parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *See Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985); *Ellis*, 163 F.3d at 1196–98 (suit for prospective injunctive relief under *Ex parte Young* may be brought in federal court subject to new limitations discussed in *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). Although Plaintiff's complaint contains a reference to "all further relief ... under law or equity," he never pursued any prospective injunctive relief and he limited his requested relief to monetary damages.

6. Counsel's lack of experience and knowledge in the area of section 1983 litigation is further highlighted by Neff's testimony at the fee hearing where he stated the reason for the dismissal of the State and Meyers, in his official capacity, was not the validity of the motion, but rather, was due to "litigation strategy." This is not an area for strategy—the State's motion was a slam-dunk winner and should have been recognized as such after only a minimal amount of time devoted to research. Moreover, the court finds counsel's inexperience and unreasonableness is evidenced by their continued insistence that Meyers is responsible for the attorney's fees related to the Eleventh Amendment issue—an issue which was not raised by Meyers and which, in any event, was indirectly resolved against Plaintiff by virtue of his dismissal.

7. These entries are on 9/5/00, 9/27/00, 10/5/00, 12/20/00, 12/21/00, 12/27/00, 12/28/00, 1/2/01, 1/3/01, 1/4/01, 1/5/01, 2/28/01, 3/12/01, 3/22/01, 3/30/01, 4/3/01, 4/10/01, 4/27/01, 4/30/01, 5/1/01, 5/2/01, 5/3/01, 5/4/01, 5/15/01, 5/17/01, 5/18/01, 5/21/01, 5/22/01, 5/23/01, 5/24/01, 5/30/01, 5/31/01, 6/5/01, 6/7/01, 6/11/01, 6/19/01, 6/21/01, 6/22/01, 6/27/01, 7/3/01, 7/5/01, and 7/6/01. The total hours listed for these entries is 113. Again, because Plaintiff has failed to properly allocate hours to tasks, the court cannot determine what portion of these 113 hours should be allocated to "discussion" time.

8. This case was certainly capable of being tried by a single, reasonably experienced attorney. The court does not object, however, to the use of two lawyers for Plaintiff assuming the overall reasonableness of the request

decision, however, counsel are not free to charge twice for essentially the same work performed outside the hearing and trial context. If counsel chooses to employ a senior partner/associate type of working relationship on a particular case, they should keep in mind that this court will not compensate them for duplicative work. Counsel should take all necessary steps to assure that the lines of responsibility are clearly delineated and that duplication of effort is eliminated. Counsel in this case have failed to do so. Their invoice is clear evidence of their abuse. These records reflect that counsel undertook to bill twice for essentially the same task, one direct (the actual research, drafting, or preparation) and one indirect (telling co-counsel or "discussing" what one has learned or done). This practice is reflective of the unreasonableness of counsel's fee request.

In addition to the specific billing practices outlined above which highlight the unreasonableness of Plaintiff's request for fees, the court notes that the simplicity of this case does not justify the expenditure of 555.27 hours of attorney and paralegal time. This was a simple, straightforward Fourth Amendment excessive force claim brought against a single Highway Patrol Officer under section 1983, with pendent state claims for assault, battery, and intentional infliction of severe emotional distress. The facts giving rise to the claim were based on a single, isolated event involving Plaintiff and Meyers. Contrary to counsel's opinion otherwise, no novel factual or legal issues were involved. Only four depositions were taken. Several discovery disputes did arise and motions to compel were filed. In addition, the parties filed several motions in limine regarding evidentiary issues. No dispositive motions were filed by either Plaintiff or Meyers.[9] Under this scenario—a simple civil rights claim with moderate discovery and evidentiary issues—the request for compensation based on 555.27 hours is clearly excessive.

The excessiveness of such request is demonstrated by a comparison of the hours requested by counsel herein with those requested in a comparable action filed in this court in *Goodwin v. State of Oklahoma ex rel the Department of Corrections*, No. CIV. 98–50–S (E.D.1997). In *Goodwin*, a Title VII case of reverse race discrimination filed against the State of Oklahoma, counsel for Plaintiff, Stanley Ward and Maribob Lee, utilized the same senior partner/associate approach utilized by Neff and Messer. The *Goodwin* case took two days to try and resulted in a $210,000 verdict in favor of Goodwin. Several significant motions were filed—Plaintiff's motion in limine, Defendant's motion for summary judgment, Plaintiff's motion to award frontpay in lieu of reinstatement, and Defendant's renewed motion for judgment as a matter of law or, alternative, motion for new trial.[10] Ward and Lee requested compensation based on a total of 213.49 hours. The requested hourly rates were $175 per hour for Ward and $125 per hour for Lee. The total fee request was $30,098.25. The court approved the fee as requested.

for compensation. Meyers' argument that only one attorney should be compensated for trial time and attendance at hearings rings hollow in light of his representation by two lawyers throughout these proceedings.

9. Plaintiff did file a motion for default against Meyers which was later withdrawn after Meyers filed his answer.

10. In the instant case, Meyers filed a post-trial renewed motion for judgment; alternative motion for new trial; alternative motion for remittitur; and alternative motion for relief from judgment due to misconduct of Plaintiff. Counsel's fee application does not include time spent by Neff and Messer in response to this motion.

The fee applications in this case and the *Goodwin* case stand in stark contrast to one another. In *Goodwin*, Ward and Lee appropriately apportioned litigation responsibilities and avoided the systemic duplication of effort exhibited by Neff and Messer. Additionally, Ward and Lee did not engage in the offensive "discussion" gymnastics that is so prevalent throughout the invoice for Neff and Messer. In sum, the conduct of Ward and Lee in *Goodwin* is the prototype for the prosecution of an action under the senior partner/associate model of litigation. The activities of Neff and Messer stand at the other end of that spectrum.

■ Having found counsel's requested hours to be unreasonable, the court must determine an appropriate reduction. In *Jane L. v. Bangerter*, 61 F.3d 1505 (10th Cir.1995), the Tenth Circuit approved the district court's 35% reduction of requested hours as excessive, redundant, or otherwise unnecessary. *Id.* at 1510. The Tenth Circuit agreed with the district court's conclusion that " 'plaintiffs' requested hours far exceed the hours that reasonably would be required by reasonably competent attorneys in handling this litigation.' " *Id.* (citing *Jane L. v. Bangerter*, 828 F.Supp. 1544, 1551 (D.Utah 1993)); *cf. Robinson v. City of Edmond*, 160 F.3d 1275 (10th Cir.1998) (reversing trial court's 45% reduction of fee request based, in part, on the simplicity of the case in section 1983 litigation involving First and Fourteenth Amendment challenge to use of Latin cross in city's official seal). The district court's calculation of a 35% reduction was influenced by a review of the plaintiff's time records which included "unspecified or inadequately specified 'review' time, excessive travel time, unnecessary and duplicative time spent in conference calls, meetings, and hearings, noncompensable public relations time, noncompensable time expended after the judgment was rendered, and noncompensable clerical or 'overhead' time." *Id.* at 1549. Some of the factors listed by the district court in *Jane L.* are present in this case. Moreover, this case was a simple excessive force action and, in that context, the examples of excessive and duplicative billing have a more pronounced and far-reaching effect.[11] The court concludes a reduction which will bring this case in line with the fee request in *Goodwin* is appropriate, with consideration given to the fact that the instant case involved a somewhat more involved discovery and evidentiary motion practice. In calculating this reduction, the court will exclude the 46.12 hours spent by legal assistants.[12] The reduction will be based on the remaining 509.15 hours expended by Neff and Messer. For the reasons noted above, the court concludes a 50% reduction is appropriate. Consequently, counsel's 509.15 requested hours will be reduced by 50% to a total of 255 hours. These hours will be divided on a 1/3–2/3 basis between Neff (⅓) and Messer (⅔)—roughly the equivalent of their ratio with respect to their requested hours and roughly the equivalent of the ratio utilized by counsel in *Goodwin*. Application of this ratio results in Neff being compensated for 85 hours. Messer shall be compensated for 170 hours. Messer's

---

11. In comparison, *Jane L.* involved a challenge to the newly amended Utah Abortion Act and various federal and state constitutional violations.

12. In his response brief, Meyers objects, in part, to the 46.12 hours attributable to legal assistants. Specifically, Meyers claims 7.16 hours attributable to Diann Whitney–Dunn are secretarial functions. Having reviewed the entries detailing the tasks performed, the court agrees and finds that Plaintiff is not entitled to be compensated for these secretarial functions. Moreover, the requested $60 per hour rate is unreasonable for similar services performed in this district. The court will award fees for legal assistant time at the rate of $30 per hour.

hours will be further divided to reflect 40 hours spent prior to his admittance to the Oklahoma bar and 130 hours after his admittance.

■ The second part of the determination of a reasonable fee involves the setting of a reasonable hourly rate. In settling upon a reasonable hourly rate the court is influenced by various factors. The rate should reflect the comparable skill and experience of those engaged in performing a particular task in the area in which the litigation occurs. *See Ramos*, 713 F.2d at 555. (discussing factors utilized on a fee request under 42 U.S.C. § 1988). In this regard, an attorney's normal billing rate is relevant, but not conclusive. *Id.* Rather, the rate established by the court should reflect the prevailing market rates and not the actual cost of the services provided. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1983); *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir.1987).

■ Neff and Messer assert hourly rates of $200 and $125 per hour, respectively. They testified these rates were within the range of rates charged in Tulsa for attorneys with their experience. No one testified on Plaintiff's behalf, however, as to what the prevailing rates in Eastern District of Oklahoma are for litigation of this kind involving attorneys with comparable experience to that of Neff and Messer. Absent any competent evidence on the prevailing market rates in the Eastern District of Oklahoma, the court relies on its knowledge of the prevailing rates in effect in this district and the court's previous awards in other cases involving attorneys with comparable skill and experience. For example, in *Goodwin*, the court approved hourly fees of $175 and $125 per hour for Ward and Lee, respectively. Ward's $175 per hour rate was entirely justified as Ward, from the court's firsthand experience, is one of the preeminent

civil rights/employment lawyers in the State of Oklahoma. Ward has over thirty years of practice in civil litigation and his knowledge of civil rights and employment law, as well as his skill as a trial lawyer, place him at the top of his profession. In contrast, Neff testified that this trial was the first civil rights case he had handled and that in seventeen years of practice he had only tried a total of between eight and twelve cases. Based on the court's observations, Neff's knowledge in the area of civil rights litigation was limited and his skill as a trial lawyer certainly does not place him in the upper echelon of trial lawyers reserved for lawyers of the ability of Ward. Consequently, the court concludes that an hourly rate of $125 per hour is appropriate for Neff as such reflects the average hourly rate approved by this court for attorneys of Neff's skill and experience. As to Messer, the court finds the appropriate hourly rate to be $90 per hour. Messer, a newly licensed attorney, does not command the requested hourly rate of $125 per hour. In *Goodwin*, Lee was awarded fees based on an hourly rate of $125 per hour. Lee, however, was an attorney with twelve years of extensive experience in civil litigation, including civil rights and employment law. In contrast, Messer was a recent law school graduate with no litigation experience. This case was his first trial and his first civil rights case. While Messer performed adequately in his first venture into federal court, his lack of experience in civil litigation in general, and civil rights litigation in particular, warrant a reduction of his $125 per hour request. Messer is certainly not entitled to the rate awarded Lee in *Goodwin*. Consequently, the court finds the appropriate rate for Messer, for time spent after his admittance to the practice of law, to be $90 per hour. With respect to the time Messer spent on this case as a law clerk prior to his admittance to the bar, the

court concludes $50 per hour is the appropriate rate.

Based on the foregoing reasons, Plaintiff's application for attorney's fees is granted in the amount of $25,490.90, calculated as follows:

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| Jonathan Neff | 85.00 | 125.00 | $10,625.00 |
| David Messer | 130.00 | 90.00 | $11,700.00 |
| | | | |
| Law Clerk | | | |
| David Messer | 40.00 | 50.00 | $ 2,000.00 |
| | | | |
| Legal Assistants | | | |
| David Messer | 27.75 | 30.00 | $ 832.00 |
| Diann Whiney–Dunn | 8.13 | 30.00 | $ 243.90 |
| Michael Schern | 3.00 | 30.00 | $ 90.00 |
| | | | $25,490.90 |