Kyle **ERICKSON**, Plaintiff,

v.

**CITY OF TOPEKA, KANSAS,** Defendant.

No. 00–4150–SAC.

United States District Court, D. Kansas.

Nov. 6, 2002.

Dennis D. Palmer, Richard M. Paul, III, Shughart Thomson & Kilroy, PC, Kansas City, MO, for plaintiff.

Deanne Watts Hay, Stanley R. Parker, Randy R. Debenham, Parker & Hay, LLP, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This case comes before the court on plaintiff's application for attorneys' fees and expenses as a prevailing party pursuant to 42 U.S.C. § 1988. Defendant objects to the amounts of fees and expenses sought by plaintiff's attorneys.

**Prevailing Party**

▮ "In order to qualify for attorney's fees under § 1988, a plaintiff must be a 'prevailing party.'" *Farrar v. Hobby*, 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

> The Court has given an expansive definition to "prevailing party." "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111–12, 113 S.Ct. 566. In addition, " 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)).

*Ballard v. Muskogee Regional Medical Center*, 238 F.3d 1250, 1254 (10th Cir. 2001).

▮ The Tenth Circuit has adopted a "three-part test to determine whether a prevailing party achieved enough success to be entitled to an award of attorney's fees." *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir.1997). "The 'relevant indicia of success' in such cases are: (1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the

plaintiff prevailed; and (3) the public purpose of the litigation." *Id.* at 1131 (quoting *Farrar*, 506 U.S. at 121–22, 113 S.Ct. 566).

Applying this analysis to the case at bar, plaintiff has achieved sufficient success to entitle him to attorney fees. Plaintiff's litigation has modified defendant's behavior, and plaintiff's suit has vindicated a legal issue, and served an important public purpose. Although plaintiff did not prevail on all his claims, his victory on his free speech claim is significant.

### General analysis

■ In determining a reasonable attorney's fee, the district court first calculates the "lodestar" figure, that is, the product of multiplying reasonable hours by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This "lodestar amount" is "the centerpiece of attorney's fee awards." *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). The lodestar figure "is the presumptively reasonable fee." *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir.1994). The lodestar amount may then be adjusted upwardly or downwardly to reflect other factors when necessary, *see Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir.1974), *overruled on other grounds, Blanchard*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).

### Number of Hours

### General Law

■ The first step in calculating the lodestar is to determine the number of hours counsel reasonably expended on the litigation. *See Case v. Unified School Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1249 (10th Cir.1998). The burden is on the applicant to show that the hours claimed are reasonable. *See Deters v. Equifax Credit Information Services,*

*Inc.*, No. 96–2212–JWL, 1998 WL 12119 at *3 (D.Kan. Jan. 6, 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)).

[This inquiry is] controlled by the overriding consideration of whether the attorney's hours were "necessary" under the circumstances. "The prevailing party must make a 'good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.'" *Jane L.*, 61 F.3d at 1510 (quoting *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933, 76 L.Ed.2d 40). A district court should approach this reasonableness inquiry "much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients...." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir.1983). However, "[t]he record ought to assure us that the district court did not 'eyeball' the fee request and cut it down by an arbitrary percentage...." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1314 (7th Cir. 1996) (quotations omitted).

*Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir.1998).

■ To satisfy the burden of proving a reasonable fee, counsel must keep contemporaneous and detailed records of time, *Sussman v. Patterson*, 108 F.3d 1206, 1212 (10th Cir.1997), even when attorneys work on a contingent fee basis, *see, e.g., Bergeson v. Dilworth*, 875 F.Supp. 733, 737 (D.Kan.1995).

"These records must reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks—for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint, and so on." *Id.* (footnote omitted). The records

should be detailed enough for the court to separate out time spent on claims on which the party did not prevail, to identify hours that are unnecessary or excessive, and to determine if billing judgment was exercised. *See Hensley,* 461 U.S. at 434, 437, 103 S.Ct. at 1939–40, 1941.

*Gudenkauf v. Stauffer Communications, Inc.,* 953 F.Supp. 1237, 1242 (D.Kan.1997).

▮▮▮▮ Attorneys normally do not bill all hours expended in litigation to a client, and "an applicant should exercise 'billing judgment' with respect to a claim of the number of hours worked." *Ellis v. Univ. of Kan. Med. Ctr.,* 163 F.3d 1186, 1202 (10th Cir.1998) (quoting *Malloy v. Monahan,* 73 F.3d 1012, 1018 (10th Cir.1996)). To show billing judgment, counsel for plaintiff should make a goodfaith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary and the court has a corresponding obligation to exclude hours not "reasonably expended" from the calculation. *Id.* The district court may also reduce the reasonable hours awarded if "the number [of compensable hours] claimed by counsel include[s] hours that were unnecessary, irrelevant and duplicative." *Carter v. Sedgwick County, Kan.,* 36 F.3d 952, 956 (10th Cir.1994).

**Application**

▮▮▮▮ Before addressing defendant's specific concerns, the court notes several important omissions in plaintiff's fee application. First, plaintiff's application does not state, and it does not appear, that counsel have winnowed the hours actually expended down to the hours reasonably expended. Instead, it reveals that only six minutes or less were spent analyzing the fee application. Second, plaintiff requests

fees for seven individuals in Missouri, and two in Virginia. Plaintiff has not shown the court why it was necessary or prudent for nine different individuals in two different states to handle this case, the facts of which were simple, although the legal analysis was unsettled. Plaintiff states that Mr. Palmer and Mr. Paul are attorneys, but has not even represented to the court who the five remaining individuals [1] are for whom fees are sought from Shughart, Thompson, & Kilroy, P.C., even to specify whether they are or are not attorneys. Because plaintiff has not born its burden to show that attorney fees are warranted for such unidentified individuals, their fees shall be assessed only at paralegal rates.

Third, plaintiff's counsel has represented that a written fee agreement exists, but curiously has failed to provide a copy of that fee agreement to the court, as is customary in fee applications. Shughart Thompson & Kilroy, P.C.'s memorandum states: "On April 12, 2000, Erickson entered into a written attorney-client agreement with The Rutherford Institute, John W. Whitehead and Shughart Thompson & Kilroy, P.C. . . . to provide legal representation in his claims . . ." From the documents presented to the court, the court is unable to tell what the relationship was between the Shughart, Thomson & Kilroy firm and The Rutherford Institute, who John W. Whitehead is, or what the fee arrangement was with plaintiff or anyone else. The record is further muddled by Shughart, Thomson & Kilroy's conflicting references to The Rutherford Institute as its "client" (Dk. 61, Exh. 1, "attorney summary") and as "of counsel." (Dk.61, p. 2).

The court next addresses defendant's specific objections to plaintiff's fee application. Defendant contends that time spent

---

1. These are Kight, Salmon, Miella, Klein, and Ripley. Defendant states, and plaintiff does not dispute, that Miella is a paralegal.

in "file organization and review" by support staff is not properly included in the fee application. The application reflects that much of the time billed by A. Miella was spent on such tasks.

■ The general premise of billing for paralegal work in these cases is that their fees are allowed if they are for tasks which would otherwise have been performed by a lawyer, but are disallowed if they are for tasks which would otherwise have been performed by a secretary or other clerical worker.

> ... paralegals are capable of carrying out many tasks, under the supervision of an attorney, that might otherwise be performed by a lawyer and billed at a higher rate. Such work might include, for example, factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence.

*Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). Such tasks are properly billed to the client, at a paralegal rate. "Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Id.*, at 288, 109 S.Ct. 2463.

■ Applying the above standard, the court finds that plaintiff cannot recover fees for the entries which include time A. Miella spent reviewing and organizing latest correspondence or pleadings.[2] That task is not one that would otherwise be billed by an attorney at a higher rate, but is one ordinarily performed by a secretary or otherwise included in a firm's overhead. Accordingly, 44.5 hours of A. Miella's time are not recoverable.

Defendant additionally requests that plaintiff not recover for time spent by unidentified individuals researching basic civil rights law.

> While hours spent by counsel on background research to familiarize themselves with the general area of the law are ordinarily deemed to be absorbed in the firm's overhead, hours incurred for research on specific issues rather than mere general familiarization have been allowed. *See McCue v. State of Kansas*, No. Civ. A. 95–CV–2116–DES, 1997 WL 381757, *3 (D.Kan. June 30, 1997).

*Robbins v. Chronister*, 2002 WL 356331 at *12 (D.Kan. Mar 1, 2002).

■ Applying the above standard, the court disallows the research on the basic elements of a racial harassment and/or hostile work environment claim under Title VII, conducted by the individual named "T. Ripley" on August 1, 8, and 9 of 2000, totaling 16.1 hours. The court additionally disallows the time spent by some other unidentified individual referred to as "T. Salmon" researching whether the free speech provision in the Kansas Constitution is broader than that of the First Amendment. The answer to that question is easily found and is undisputed, and no justification has been shown for the recorded 8.90 hours on Mar. 15 and Mar. 25–27, 2001, researching this simple matter.

Defendant additionally requests that the court discount travel time because plaintiff has not shown that such time was spent working on the client's case. *See Wilder–Davis v. Board of Com'rs of Johnson County, Ks.* 2000 WL 1466691, *3 (D.Kan. 2000) (finding "attorneys cannot recover fees for time spent traveling unless that time was spent working on the client's case."). Defendant does not specify what

---

2. Although many entries consist solely of this task, other entries include this task along with others which would have been recoverable, had they been separately itemized.

travel time it is challenging, and the only such time spent by counsel the court has discovered was between Topeka and Kansas City on Mar.16 to meet with plaintiff Erickson, and on Mar. 22 and 23, 2001, for depositions.

█ Although plaintiff has failed to show that counsel spent travel time working on his case, the court believes that counsel should not be penalized for time spent traveling. By accepting the appointment to represent plaintiff in Topeka, counsel gave up other opportunities to work on other matters at a reasonable hourly rate. Therefore, counsel's travel time will be awarded at a reasonable hourly rate. *See Robbins,* 2002 WL 356331 at *12.

Similarly, A. Miella's trip to Topeka on Feb. 2, 2001, to meet with plaintiff Erickson to take photos of other bumper stickers in city employee parking lots is facially reasonable, as is his travel time to Topeka on Sept. 25, 2000, to serve defendant with process. No travel time will thus be disallowed.

The court finds the remaining hours submitted by plaintiff are sufficiently specific and adequately supported by contemporaneous time records to warrant an award of fees. In accordance with the above modification, plaintiff's counsel is entitled to fees for the other hours billed.

**Hourly Rate**

█ "The establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area." *Lucero v. City of Trinidad,* 815 F.2d 1384, 1385 (10th Cir.1987) (citation omitted). A court is to look "to the prevailing market rates in the relevant community" in calculating a reasonable fee. *Blum,* 465 U.S. at 895, 104 S.Ct. 1541. The relevant community is the area in which the litigation occurs. *Ramos,* 713 F.2d at 555.

**Shughart, Thompson & Kilroy's fees**

Plaintiff's affidavit and brief assert that the rates it seeks, which range from $220 to $260 an hour for lead counsel Dennis Palmer, are in line with fees awarded in the Kansas City, Missouri area. Plaintiff has shown no support for that assertion, and the court knows of none. *See Robbins,* 2002 WL 356331(finding the "Kansas City prevailing market rate for lead counsel in civil rights litigation is between $120 and $225 per hour," citing numerous cases); *see generally Boilermaker–Blacksmith National Pension Fund v. ACE Polyethylene Bag Co.,* 2002 WL 372868, (D. Kan. Mar. 7, 2002), and cases cited therein.

More importantly, plaintiff errs in assuming that the relevant legal market is the Kansas City area. The relevant market is the place where the case is tried, *i.e.,* Topeka, Kansas. Any assumption that the rates of attorneys in the Topeka, Kansas legal community are substantially similar to those in the Kansas City, Missouri area is unfounded. *c.f., Franz v. Lytle,* 854 F.Supp. 753 (D.Kan.1994) (court took judicial notice that the hourly rates in Topeka were much less than in Wichita). *See Marcus v. State of Kansas, Dept. of Revenue,* 209 F.Supp.2d 1179, 1184 (D.Kan. 2002) (finding $121.37 per hour is in accord with the prevailing market rates in Topeka for similar litigation by a seasoned attorney with many years of civil litigation experience); *Godinet v. Management and Training Corp.,* 182 F.Supp.2d 1108, 1113 (D.Kan.2002) (Topeka Title VII case reducing hourly rates for attorney with over twenty-five years of experience to $175 and for attorneys with over 20 years experience to $150); *Schmidt v. Cline,* 171 F.Supp.2d 1178, 1182 (D.Kan.2001) (this court's free speech case awarding fees at the rate of $150 per hour, which is at "the high end of rates in this community").

■ The burden is with the applicant "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n. 11, 104 S.Ct. 1541. Plaintiff has failed to do so.

Plaintiff has not shown the experience, reputation, or skill of the attorneys for whom fees are sought, let alone the rates of attorneys having similar experience, reputation and skill in Topeka.[3] Plaintiffs have neither attached affidavits from others familiar with the hourly billing rates of attorneys with comparable skill and experience in free speech litigation who practice in the Topeka area, nor otherwise established that such attorneys bill in the $220 to $260 per hour range.

■ Where, as here, a district court does not have before it adequate evidence of prevailing market rates, the court may, in its discretion, use other relevant factors including its own knowledge to establish the rate. *Case*, 157 F.3d at 1257; *See Lucero*, 815 F.2d at 1385. The court can take judicial notice of the prevailing rate of fees in this community, *see e.g., Ware v. Sullivan*, 1991 WL 42293(D.Kan. Mar.6, 1991); *Franz*, 854 F.Supp. 753, and will do so here.

The court is unaware of any case in Topeka in which attorney's fees have been awarded pursuant to § 1988 at anywhere near the rates sought by counsel in this case. Fees awarded in similar cases, even

for attorneys having many years of experience, usually range from $125 to $175 per hour, rather than from the $220 to $260 an hour plaintiff seeks here.

Shughart, Thomson & Kilroy's application shows not only different hourly rates for different persons, but different hourly rates charged by one person. For example, Mr. Palmer requests compensation for work charged at $220 per hour, $245 per hour, and $260 per hour. Mr. Paul requests compensation for work charged at $155, $175, and $190 per hour. No attempt has been made to explain why the rates vary for a single attorney. Although the court could speculate that the rates vary depending on the task being performed, the records do not reveal which tasks were performed at which rate, as would be necessary to begin to determine the reasonableness of the rates charged.[4]

Additionally, one or more persons included in Shughart, Thomson & Kilroy's "attorney summary," (Dk.61, attachment) is not an attorney. These persons also bill at different rates, for unexplained reasons. For example, A. Miella, a paralegal, seeks compensation for tasks performed at the rates of $85, $95, and $105 per hour. No explanation is made as to why his or her rates differ, or, more importantly, why each different rate is reasonable. The court is unable to determine from plaintiff's application whether the other persons for whom fees are sought are attorneys, paralegals, legal assistants, secretaries, runners or other support personnel. In short, plaintiff's application is severely lacking in the detail required to support its claim for fees.[5]

---

3. The only assertions in the pleadings regarding these factors are that Dennis Palmer is a member of certain bars, and that he and Richard Paul are "experienced Kansas City civil litigation attorneys." (Dk. 61, attached declaration, p. 1; Dk. 62, p. 9).

4. The court could calculate this amount by dividing the specific amount charged for each of the hundreds of itemizations by the number

of hours recorded, if the court assumed that multiple tasks included in a single entry were charged at only one rate, but this tedious task is one for counsel, not the court, to perform.

5. The court recognizes that a properly documented application may easily have established entitlement to a much greater amount of fees, but no untimely documentation will be permitted.

Based upon the complete absence of information showing the nature and reasonableness of plaintiff's fee classification system, the court will permit only one flat rate fee per person. Based upon the court's own knowledge of rates in the Topeka market, those fees will be as follows: Dennis Palmer—$175 per hour; Richard Paul—$115 per hour; all other persons—$60 per hour.

Accordingly, the lodestar is as follows:

Palmer—$175 × 141.5 hours $24,762.50
Paul—$115 × $227.9 hours $26.208.50
Kight—$60 × 6 $36.00
Salmon—$60 × 25 $1,500.00
Miella—$60 × 38.90 $2,334.00
Klein—$60 × 6.80 $408.00
Ripley—$60 × 31.7 $1.902.00
$57,151.00

### Rutherford Institute's fees

The Rutherford Institute's application states that Steven Aden is an attorney having 12 years experience, "including extensive experience litigating constitutional issues at all levels of federal trial and appellate courts." (Dk.61, Exh. 2.) Defendant makes no challenge to his itemized billings at the rate of $175 per hour, other than the general assertion that such a rate is too high for this locale. Based upon Mr. Aden's experience and the court's knowledge of rates in this area for similar work, Mr. Aden's fees will be permitted at the rate of $175.00 per hour.

The Rutherford Institute additionally seeks fees for Ron Rissler. The documents before the court alternatively refer to Ron Rissler as a "legal administrator," (Dk.61, Att.2, Exh. A., p. 2), a "paralegal," (declaration not under oath of Steven Aden), and a "legal coordinator." (Dk. 61, Att. 1, Exhs A, p. 1 and C, p. 1.) Although certain paralegal fees are permissible, fees of a legal administrator are usually not awarded, even if properly documented and itemized.

Even assuming that Mr. Rissler is a paralegal, the application fails to provide any information as to his education, experience, or skill level. Further, although he seeks $780.00 in fees, he has not itemized his billings. Rather, he has lumped all his work into one entry totaling 13 hours, which states: "various telephone conversations, e-mails, written correspondence to client and attorneys and legal research." (Dk. 61, last page.) This generalized description of his tasks shows them to be largely clerical in nature. Because of the failure to contemporaneously itemize his work, and because of the general clerical nature of the tasks, no fees will be awarded for Ron Rissler.

### Fee Enhancement

Plaintiff seeks a "fee enhancement" because of the "nature of the case and the result." (Dk.61, p. 2), asserting that some of the factors listed in *Johnson* should increase the lodestar amount by 50%. The court agrees that the legal issues presented in this case were both unique and complicated, but this is not the determinative factor in the analysis. Further, no authority has been shown for the proposition that a 50% enhancement is ever appropriate. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 729–31, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (even where a risk enhancement is proper, the general rule is that an upward adjustment of the lodestar should be no more than 33%.).

There is a strong presumption that the lodestar is the reasonable fee, and the fee applicant bears the burden "of showing that 'such an adjustment is necessary to the determination of a reasonable fee.'" *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (quoting *Blum*, 465 U.S. at 898, 104 S.Ct. 1541).

Plaintiff fails to recognize that the Supreme Court has, since *Johnson*, severely restricted the court's discretion to adjust the lodestar upward. *See Delaware Valley*, 478 U.S. at 565, 106 S.Ct. 3088 (" '[N]ovelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.") (quoting *Blum*, 465 U.S. at 898–900, 104 S.Ct. 1541).

Here, plaintiff has not shown why the lodestar amount is unreasonable or why the quality of representation is not reflected in the product of the reasonable number of hours times the reasonable hourly rate. Plaintiffs have not shown that this case is one of the very rare circumstances where the attorney's work is so superior and outstanding that it far exceeds the expectations of clients and normal levels of competence. In the absence of such a showing, the court cannot increase the fee award for the quality of representation.

 Additionally, the Supreme Court and the Tenth Circuit have held that contingency multipliers are not permitted for fees awarded pursuant to fee shifting statutes such as 42 U.S.C. § 1988. *See Dague*, 505 U.S. at 567, 112 S.Ct. 2638; *19 Solid Waste Dept. Mechanics v. City of Albuquerque*, 229 F.3d 1164, 2000 WL 1133131, *2 (10th Cir. Aug. 10, 2000) (Table). Thus no upward adjustment for likelihood of success, or risk of loss, is permissible. Plaintiff's request for a fee enhancement shall therefore be denied.

## Expenses

 Plaintiff requests an award for costs and expenses in the total amount of $4,093.22. Reasonable expenses incurred in representing a client in a civil rights case may be recovered in an attorney's fee award if such expenses are usually billed in addition to the attorney's hourly rate. *See Ramos*, 713 F.2d at 559. The attorneys requesting fees bear the burden of establishing the amount of compensable expenses to which they are entitled. *See Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1208 (10th Cir.1986).

 Defendant challenges plaintiff's request for $1,147.51 for computerized legal research costs. Such a cost, if reasonable, may be properly included in expenses under § 1988, where it is normally itemized and billed to the client in addition to the attorney's hourly rate. *See Case*, 157 F.3d at 1257. *Compare Jones v. Unisys Corp.*, 54 F.3d 624, 633 (10th Cir. 1995) (computer research costs not statutorily authorized under 28 U.S.C. § 1920). The court is aware that such expenses are normally itemized and billed separately within the Topeka community. *See Godinet v. Management and Training Corp.* 182 F.Supp.2d 1108, 1114 (D.Kan.2002) This amount shall not be reduced.

Defendant contends that many other cost items should be included in routine overhead items at plaintiff's firm, and are thus not properly chargeable to defendant. Cost items such as photocopying, mileage, and postage "should be allowed as fees only if such expenses are usually charged separately in the area." *Sussman v. Patterson*, 108 F.3d 1206, 1213 (10th Cir.1997), quoting *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir.1983). The court has reviewed the challenged expense items and finds them properly charged as expense items.

Accordingly, defendant's motion for attorney's fees will be granted in the following amounts: Total fees to in Shughart, Thomson & Kilroy—$57,151.00; Total fees to The Rutherford Institute—$4,095.00;

Total expenses to Shughart, Thomson & Kilroy—$4,093.22.

IT IS THEREFORE ORDERED that plaintiff's motion for attorney's fees and costs is granted in part and denied in part in accordance with the terms of this memorandum and order.